**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BRITTANI KIRBY, KAREEM SULLIVAN, and**
**JENNIFER PARK,** *individually and on behalf of all other*
*persons similarly situated,*

|  |  |  |
|---|---|---|
| | **Plaintiffs,** | |
| **v.** | | **5:19-CV-1306** |
| | | **(FJS/ML)** |
| **FIC RESTAURANTS, INC.,** | | |
| | **Defendant.** | |

_____

**APPEARANCES**                              **OF COUNSEL**

**GATTUSO & CIOTOLI, PLLC**               **FRANK S. GATTUSO, ESQ.**
The White House
7030 East Genesee Street
Fayetteville, New York 13066
Attorneys for Plaintiffs

**VIRGINIA & AMBINDER, LLP**             **JAMES E. MURPHY, ESQ.**
40 Broad Street, 7th Floor
New York, New York 10004
Attorneys for Plaintiffs

**FITAPELLI & SCHAFFER**                   **FRANK MAZZAFERRO, ESQ.**
28 Liberty Street, 30th Floor
New York, New York 10005
Attorneys for Plaintiffs

**OGLETREE, DEAKINS, NASH**             **AARON WARSHAW, ESQ.**
**SMOAK & STEWART, PC.**                  **SHABRI BALIGA, ESQ.**
599 Lexington Avenue                          **JAMES T. MCBRIDE, ESQ.**
Ste 17th Floor                                    **JONATHAN C. WILSON, ESQ.**
New York, New York 10022
                -and-
Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas 75225
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. BACKGROUND & PROCEDURAL HISTORY

In their Amended Class Action Complaint, Plaintiffs Brittani Kirby, Kareem Sullivan and Jennifer Park assert eight causes of action against Defendant FIC Restaurants, Inc., alleging various violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") that occurred while they were working as tipped servers at Friendly's restaurants. *See generally* Dkt. No. 31.

On April 14, 2020, Plaintiffs filed an unopposed motion for the Court's approval of their proposed Settlement Agreement, which was designed to compensate a nationwide class of Defendant's employees ("the Settlement Class") consisting of two subclasses, the "New York Class" and the "FLSA Collective." *See* Dkt. No. 18; *see also* Dkt. No. 18-3 at §§ 2.12, 2.16. The Court denied that motion, except to the extent that it certified the New York Class. *See* Dkt. No. 22 at 13 ("May 28th Order").[1]  The Court noted that Section 2.16 of the Agreement defined the New York Class as follows:

> "all current and former tipped servers employed by Defendant at its restaurants who were allegedly paid under full minimum wage for all hours worked and all hourly employees who were allegedly [ ] required to work off the clock, were allegedly paid under full minimum wage for all hours worked, or who allegedly were not paid overtime for hours worked in excess of forty (40) hour[s] per week … from October 18, 2013 through the date of the Approval order, which the Parties have stipulated for settlement purposes only."

*Id.* at 8 n.2 (quoting Dkt. No. 18-3 at § 2.16).

---

[1] All references to page numbers of documents in the record are to the page numbers that the Court's electronic filing system generates and are located in the top right corner of those pages.

In response to that Order, Plaintiffs filed an unopposed motion for preliminary approval of the parties' Revised Settlement Agreement, *see* Dkt. No. 23, which the Court approved, *see* Dkt. No. 24 ("June 29th Order"). The Court's June 29th Order set the Final Fairness Hearing for September 18, 2020.[2]  *See id.*

On September 9, 2020, Plaintiffs filed an unopposed motion for final approval of the Revised Settlement Agreement, together with a motion seeking the payment of attorneys' fees and costs, settlement claims administration costs, and service awards.  *See* Dkt. No. 30.  In their memorandum of law, as well as at the Final Fairness Hearing, counsel stated why they believed the Revised Settlement Agreement was fair, reasonable and adequate.  *See* Dkt. No. 30-1 at 15-21.  Counsel also advised the Court that notice of the settlement was successfully delivered to 95.37% of the Settlement Class.  *See id.* at 14 (citing Declaration of Claims Administrator Eric Nordskog [("Nordskog Declaration")], Murphy Decl. Ex. 3, at ¶ 9).  Specifically, notice was provided to 11,793 individuals, consisting of 6,747 members of the New York Class and 5,046 members of the FLSA collective outside of New York.  *See id.* (citing [Nordskog Declaration] at ¶ 7).  Of those 11,793 mailings, 2,119 were returned as undeliverable; however, the Claims Administrator was able to find updated mailing addresses for 1,463 of those 2,119 undeliverable notices, leaving only 656 of the 11,793 notices undeliverable.  *See id.* (citing [Nordskog Declaration] at ¶ 9).  Furthermore, a total of 3,078 claims were processed; 6 individuals opted-out of the settlement; and no class or collective action members objected to the settlement.  *See id.* (citing [Nordskog Declaration] at ¶¶ 10-12).

---

[2] Due to changes in schedules, the Court adjourned the Final Fairness Hearing to September 24, 2020.  However, Court staff was in the courtroom on September 18, 2020, in case any Settlement Class Members or their counsel appeared at the scheduled time.  No one was present at that time.

## II. DISCUSSION

### A.  Final New York Class Action Approval

Under Rule 23(e) of the Federal Rules of Civil Procedure, the Court must approve the class

action settlement.  *See* Fed. R. Civ. P. 23(e).  To grant final approval, the Court must find that

the class action settlement is "fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2).

"'Fairness is determined upon review of both the terms of the settlement agreement and the

negotiating process that led to such agreement.'"  *Cruz v. Sal-Mark Rest. Corp.*, No. 1:17-CV-

0815 (DJS), 2019 WL 355334, *4 (N.D.N.Y. Jan. 28, 2019) (quoting *Frank v. Eastman Kodak

Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005)).  "Courts examine procedural and substantive

fairness in light of the 'strong judicial policy favoring settlements' of class action suits."  *Id.*

(quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quotation

marks and citation omitted)).  "'A presumption of fairness, adequacy, and reasonableness may

attach to a class settlement reached in arm's length negotiations between experienced, capable

counsel after meaningful discovery.'"  *Id.* (quoting [*Wal-Mart Stores, Inc.*, 396 F.3d at 116]

(internal quotation marks omitted)).

### 1.  *Procedural Fairness*

"To determine whether a settlement is procedurally fair, courts examine the settlement's

terms and the negotiating process leading to settlement."  *Elliot v. Leatherstocking Corp.*, No.

3:10-CV-0934 (MAD/DEP), 2012 WL 6024572, *3 (N.D.N.Y Dec. 4, 2012) (citing *Wal-Mart

Stores, Inc.*, 396 F.3d at 116-117 (citation omitted)).  Here, the parties devoted substantial time

attempting to settle this action.  *See* Dkt. No. 18-1 at 4.  Plaintiffs' counsel conducted interviews

- 4 -

with Settlement Class Members.  *See id.*  The parties engaged in informal discovery; and

Defendant produced extensive data regarding payroll practices, time records, tip notices, and

arbitration class and collective waiver agreements.  *See id.*  The parties participated in multiple

in-person and telephonic settlement conferences, and they eventually attended a full-day in-

person mediation in Chicago, Illinois, with professional mediator Michael Dickstein.  *See id.*  In

total, the parties spent more than five months setting forth the principal terms of the settlement

and negotiating the final Revised Settlement Agreement.  *See id.*  Thus, the Court finds that the

settlement is procedurally fair and adequate and not the product of fraud or collusion.

### 2.  *Substantive Fairness*

"To determine if a settlement is substantively fair, the Court should examine the facts set

forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)."

*Elliot*, 2012 WL 6024572, at *3.  "'A court need not find that every factor militates in favor of

finding fairness; rather, a court considers the totality of these factors.'"  *Id.* (quoting *Gorey v.

Manheim Servs. Corp.*, 2012 WL 760309, at *3 (S.D.N.Y. 2012) (citations omitted)).  The nine

*Grinnell* factors include the following:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction
> of the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; [and]
> (9) the range of reasonableness of the settlement fund to a possible recovery in
> light of all the attendant risks of litigation.

*Id.* (citing *Grinnell*, 495 F.2d at 463 (citations omitted)).

In this case, the *Grinnell* factors weigh heavily in favor of the settlement.  First, "[c]lass

actions are generally complex and preparing and putting evidence to support plaintiffs' position

would consume tremendous time and financial resources." *Id.* (citing *Ebbert v. Nassau County*, 2011 WL 6826121, at *9 (E.D.N.Y. 2011)).  This case is no exception as it involves more than 11,700 Class and Collective Members sharing claims under both federal and state law.  *See* Dkt. No. 30-1 at 15.  Furthermore, the Court agrees with Plaintiffs that motion practice would undoubtedly ensue absent settlement and a trial would undoubtedly follow.  *See id.* at 15-16.  On the other hand, this settlement makes monetary relief available to Class Members promptly and efficiently.  *See id.* at 16.  Thus, the Court finds that the first factor weighs in favor of final approval as litigation through trial would be complex, expensive, and long.

Second, the Settlement Class has responded positively to the settlement, with no objections and only six (6) New York Class Members opting out. *See* Dkt. No. 30-5, Nordskog Declaration, at ¶¶ 10-12. "The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate." *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008).  Therefore, the Court finds that the second factor weighs in favor of approval.

The third factor allows courts to "'determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'"  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quotation omitted).  As discussed above, the parties conducted informal discovery, in which Defendant provided documents and data; counsel interviewed Plaintiffs; and the parties evaluated and discussed Plaintiffs' claims and Defendant's defenses during the settlement conference and mediation session they attended.  See Dkt. No. 30-1 at 17.  The Court finds that this is sufficient discovery to appreciate the merits of the case before negotiating a settlement and participating in mediation.

Next, a trial on the merits would involve risks because Plaintiffs "would have to prove that they [had not received] the legally-required minimum wage, overtime, and spread-of-hours pay, which would require proving that Defendant['s] time records are inaccurate." *Cruz*, 2019 WL 355334, at *5. This would certainly be difficult, as Defendant vigorously denies the allegations and contends, among other things, that tipped employees received proper wage notices, wage statements, and Tip Credits and that its payroll and time records demonstrate that none of its employees worked off the clock and that all workers were paid overtime for all hours worked over forty (40) per week. *See* Dkt. No. 18-1 at 10.

There is no guarantee of an award of damages in Plaintiffs' favor if the parties go to trial. Settlement is much less risky and guarantees Plaintiffs a significant award almost immediately. "The immediate recovery of the substantial settlement amount includes meaningful payment to class members and is outweighed by the mere possibility of further relief." *Elliot*, 2012 WL 6024572, at *4 (citing *Ramirez*, 2012 WL 651640, at *3 (S.D.N.Y. 2012) (the settlement for employees of catering service who were not properly compensated for overtime hours was a fair and reasonable settlement)). Furthermore, Defendant's pending bankruptcy proceedings could limit the amount of damages that Plaintiffs could actually recover after a trial; and the Court is not convinced that Defendant could withstand a higher judgment in the future. Accordingly, upon consideration of all of the *Grinnell* factors, the Court concludes that the settlement is substantively fair, reasonable, and adequate as Rule 23 requires.

Since the Court finds that the parties' settlement with respect to the New York Class is both procedurally and substantively fair, reasonable, and adequate, and for each of the above-stated reasons, the Court approves the final Revised Settlement Agreement covering the New York Class.

## B.  Final FLSA Collective Action Approval

The Second Circuit has held that "[s]tipulated dismissals settling FLSA claims with

prejudice require the approval of the district court or the [Department of Labor] to take effect."

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (citing [Fed. R. Civ.

P.] 41(a)(1)(A)(ii)).  "Requiring judicial … approval of such settlements is consistent with what

both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose:

'to extend the frontiers of social progress by insuring to all our able-bodied working men and

women a fair day's pay for a fair day's work.'"  *Id.* (quoting *A.H. Phillips, Inc. v. Walling*, 324

U.S. 490, 493, 65 S. Ct. 807, 89 L. Ed. 1095 (1945) (internal quotation marks omitted)).

"The touchstone of the required review under *Cheeks* is that a settlement agreement must be

fair and reasonable."  *Li v. Ichiban Mei Rong Li Inc.*, No. 1:16-CV-0863 (DEP), 2017 WL

1750374, *2 (N.D.N.Y. May 4, 2017) (citing *Lopez v. 41-06 Bell Blvd. Bakery LLC*, No. 15-

CV-6953, 2016 WL 6156199, at *1 (E.D.N.Y. Oct. 3, 2016) (citing cases)).  Courts in this

circuit have pointed to the following five factors that courts should consider in determining the

fairness of the settlement:

> (1) the ranges of potential recovery by the plaintiff; (2) the litigation risks faced
> by the parties; (3) the extent to which the parties will avoid the burdens of
> expensive litigation; (4) whether the agreement results from good-faith, arm's-
> length negotiations involving experienced attorneys; and (5) whether there is any
> indicia of fraud or collusion.

*Id.* (citing *Lopez*, 2016 WL 6156199, at *1 (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d
332, 335 (S.D.N.Y. 2012))).

In addition to the reasons for which the Court approved the settlement with respect to the

New York Class, the Court notes that the parties reached this settlement after vigorous arm's-

length negotiations between counsel—who the Court previously found are well-versed in wage

and hour law—after substantial informal discovery, including thousands of pages of payroll and time records.  *See* Dkt. No. 18-1 at 9; *see also* Dkt. No. 24 at 8-9.  Therefore, upon reviewing these factors and the Revised Settlement Agreement with respect to the FLSA Collective, the Court finds that the settlement meets the FLSA standard for final approval.

### C.  Attorneys' Fees and Costs

"A district court has broad discretion to determine what constitutes a reasonable award for attorneys' fees."  *Elliot*, 2012 WL 6024572, at *5 (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47-48 (2d Cir. 2000)).  "Attorneys who create a common fund from which members of a class are compensated are entitled to 'a reasonable fee—set by the court—to be taken from the fund[.]'"  *Id.* (quoting [*Goldberger*, 209 F.3d at 47-48]).  "The Court may award fees using the lodestar method, where the Court multiplies the reasonable hourly rate by the hours expended on the case or award fees based upon a percentage of the common fund."  *Id.* (quoting [*Goldberger*, 209 F.3d at 47-48] (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) ("[t]he reasonable hourly rate is the rate a paying client would be willing to pay … bearing in mind that a reasonable paying client wishes to spend the minimum necessary to litigate a case effectively"))).

"In cases of this nature, the 'trend' in this Circuit is to award fair and reasonable fees using the 'percentage of recovery method[.]'"  *Id.* (citing *McMahon*, 2010 WL 2399328, at *7 (collecting cases)); *see also Cruz*, 2019 WL 355334, at *7 (holding that "Class Counsel's request for one-third (33.33%) of the settlement amount is reasonable and 'consistent with the norms of class litigation in this circuit'" (quotation and other citation omitted)).  Under either the percentage of recovery or lodestar methods, the Court is guided by the factors set out in

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  In *Goldberger,* the Second Circuit noted that courts considering the reasonableness of attorneys' fees in common fund cases should consider "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation …; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Goldberger*, 209 F.3d at 50 (2d Cir. 2000) (quoting *Union Carbide*, 724 F. Supp. at 163 (summarizing *Grinnell* opinions)).

Here, Plaintiffs' counsel requests $250,000 -- amounting to one-third or 33.3% of the total award -- in fees, as well as reimbursement of costs and expenses.  *See* Dkt. No. 23-2, Revised Settlement Agreement, at § 4.2.  The Court recognizes that Plaintiffs' counsel risked time and effort and advanced costs and expenses in pursuing this litigation.  As the Court has already noted, class action and collective action cases are extremely complicated and time-consuming, thus making them risky for the attorneys involved; and the attorneys must have a great amount of experience in litigating these sorts of cases.  Furthermore, "courts prefer the percentage method because it directly aligns the interests of the class and its counsel and because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made."  *Elliot,* 2012 WL 6024572, at *5 (citing *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted)).  "The percentage method also 'mimics the compensation system actually used by individual clients to compensate their attorneys.'"  *Id.* (quoting *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999)).  Accordingly, the Court approves Plaintiffs' request for $250,000 in attorneys' fees pursuant to the percentage of recovery method.

Additionally, "[b]oth the FLSA and the NYLL provide that plaintiffs may recover reasonable costs." *Wang v. Masago Neo Asian Inc.*, No. CV 14-6249 (DRH) (ARL), 2016 WL 7177514, *4 (E.D.N.Y. Sept. 26, 2016) (citing 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1)); *id.* (finding that "the Court's filing fee, process server fees, copies, deposition costs, and translation fees" were reasonable); *see also Michaelsen v. Sickday, LLC*, No. 16 Civ. 1474 (HBP), 2017 WL 1331357, *3 (S.D.N.Y. Apr. 11, 2017) (holding that costs amounting to less than 3% of the overall settlement figure are reasonable).

Plaintiffs assert that Class Counsel has incurred $15,926.02 in litigation costs associated with pursuing this litigation. *See* Dkt. No. 30-1 at 33.  These costs include mediator fees, travel, and hotel expenses related to the private mediation in Chicago, purchasing an index number, process service fees, PACER fees, LexisNexis research fees, and FedEx fees. *See* Dkt. Nos. 18-2 at ¶ 12, 18-7 at ¶ 24, 18-9 at ¶ 16.  In total, this amounts to just 2.12% of the total settlement amount.  The Court thus finds that these fees are reasonable and approves Plaintiffs' request for $15,926.02 for reimbursement of Class Counsel's litigation costs.

## D.  Service Awards

Service awards "are common in class action [and FLSA] cases and are important to compensate plaintiff for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant and any other burdens sustained by the plaintiff." *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) (collecting cases).  In this case, the parties have agreed to a service award of $5,000 for each of the Named Plaintiffs - Brittani Kirby, Kareem Sullivan, and Jennifer Park. *See* Dkt. No. 23-2 at §§ 2.33, 4.3.  Courts in this Circuit regularly uphold such awards. *See Chavarria*, 875 F. Supp. at 177 (finding a $5,000 service award to the named plaintiff

reasonable); *Cruz*, 2019 WL 355334, at \*8 (same).  Thus, the Court approves the agreed-upon

service awards as fair and reasonable.

### E.  Settlement Claims Administrator's Fees

In its June 29th Order, the Court appointed A.B. Data, Ltd. as the Settlement Claims

Administrator and preliminarily approved administration fees up to $45,000.  *See* Dkt. No. 24 at

9.  The Settlement Claims Administrator has an important role in this litigation; and, to date, it

has established the Qualified Settlement Fund, mailed all notices, mailed and received all claims

forms, and processed opt-out requests.  *See* Dkt. No. 23-2 at §§ 2.2, 3.2.  Going forward, the

Settlement Claims Administrator will ultimately have the responsibility of calculating,

allocating, and distributing all amounts from the Settlement Fund to the appropriate Settlement

Class Members, as well as distributing attorneys' fees and service awards.  *See id.* Considering

these duties -- and that the estimated Settlement Class included more than 11,000 members who

needed to be notified and sent claims forms -- the Court finds that $45,000 in settlement

administration fees is reasonable.  *See, e.g.*, *Flores v. Mamma Lombardi's of Holbrook, Inc.* 104

F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (finding that "[c]ourts within this district have awarded

up to $50,000 for the settlement claims administrator" (citation omitted)); *Henry v. Little Mint,*

*Inc.*, No. 12 Civ. 3996 (CM), 2014 WL 2199427, \*17 (S.D.N.Y. May 23, 2014) (awarding class

counsel reimbursement of $7,985.74 for up-front settlement administration costs and approving

further estimated $34,000 in administration fees).

### F.  Conclusion

In sum, for all of the above-stated reasons, the Court approves the parties' final Revised

Settlement Agreement with respect to the New York Class and the FLSA Collective, as well as

Plaintiffs' request for attorneys' fees, costs, service awards, and settlement claims administration costs.

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' unopposed motion for final approval of the Revised Settlement Agreement with respect to the New York Class and FLSA Collective, *see* Dkt. No. 30, is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' motion for an award of attorneys' fees (**$250,000.00**), reimbursement of costs and expenses (**$15,926.02**), service awards (**$5,000.00** to each of the named Plaintiffs), and claims administration fees (**$45,000.00**), *see* Dkt. No. 30, is **GRANTED**; and the Court further

**ORDERS** that Class Members who have not properly and timely exercised their opt-out rights are conclusively deemed to have released or discharged Defendant and its present and former owners, officers, directors and employees from, and are permanently enjoined and barred from asserting, either directly or indirectly, against Defendant, any and all claims released in the Revised Settlement Agreement.  All such matters are hereby finally concluded, terminated and extinguished; and the Court further

**ORDERS** that A.B. Data, Ltd., the Settlement Claims Administrator, shall distribute the settlement funds in accordance with the terms of the Revised Settlement Agreement; and the Court further

**ORDERS** that the Clerk of the Court shall enter Final Judgment consistent with this Memorandum-Decision and Order, and dismiss this case **with prejudice**; and the Court further

**ORDERS** that, without affecting the finality of this Memorandum-Decision and Order, the Court will retain jurisdiction over the case following the entry of the dismissal **with prejudice** of this action to enforce the Revised Settlement Agreement until 30 days after the end of the time for Settlement Class Members to cash their settlement check has expired, as defined in the Revised Settlement Agreement.  The parties shall abide by all terms of the Revised Settlement Agreement and this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated:  September 28, 2020
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

- 14 -